# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: OCTOBER 29, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0371-MR


JEREMY BREEDEN                                            APPELLANT


|  | ON APPEAL FROM KENTON CIRCUIT COURT |
|---|---|
| V. | HONORABLE PATRICIA M. SUMME, JUDGE |
|  | NO. 18-CR-00836 |


COMMONWEALTH OF KENTUCKY                          APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Under KRE[1] 611, a trial court is to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. The primary issue we address in this case is whether the Kenton Circuit Court erred in so limiting Jeremy Breeden's right to cross-examine a witness as to infringe on his right of confrontation guaranteed under both the federal and state constitutions. We hold that the trial court did not err. We also reject Breeden's other claims of error and therefore affirm the Kenton Circuit Court's judgment of conviction.

---

[1] Kentucky Rules of Evidence.

## I.    FACTUAL AND PROCEDURAL BACKGROUND.

Breeden appeals as a matter of right from the Kenton Circuit Court's judgment convicting him of one count of sodomy in the first degree and two counts of sexual abuse in the first degree and sentencing him to life imprisonment.[2] Ky. Const. § 110(2)(b).

L.M., the victim, is the daughter of S.R.[3] Breeden and S.R. were in a long-term relationship. When Breeden's sons from his earlier relationships went to spend weekends with their respective mothers, S.R. and her two children typically spent the weekend at Breeden's residence. The basic allegations were that, on one such weekend, in early May 2018, Breeden (1) put his mouth and tongue on L.M.'s vagina; (2) subjected L.M. to sexual contact by touching L.M.'s hand to his penis; and (3) performed a "period test" on L.M. by inserting his fingers into her vagina. All three events occurred on the same date, when L.M. was eight years-old.

On May 30, 2018, L.M. disclosed the abuse to her mother. At trial, L.M.'s testimony indicated that the abuse had occurred some months before. S.R., however, was more specific in her testimony, pinpointing the incidents at the first weekend of May 2018.

After L.M.'s disclosure, S.R. began a text conversation with Breeden wherein the sexual acts performed on L.M. were discussed. At trial, S.R.

---

[2] The jury recommended, and the trial court imposed, sentences of life imprisonment on the sodomy count, and ten years on each of the sexual abuse counts. The jury recommended the sentences be served consecutively. The trial court, however, ordered the ten-year sentences to run concurrent with each other and with the life imprisonment sentence.

[3] Both mother and daughter are referred to by their initials to preserve their anonymity.

2

testified to this text message exchange, and virtually all of it was admitted into evidence.  Breeden made explicit denials in the text message conversation; however, some of Breeden's text messages were interpreted by S.R. as admissions.  When Breeden's counsel attempted to cross-examine S.R. regarding these text messages, the trial court limited that cross.

At the conclusion of the Commonwealth's case, Breeden moved for a directed verdict, which the trial court denied.  Breeden testified in his own defense and denied performing any type of sexual act on L.M.

Upon conclusion of this two-day trial, the jury convicted Breeden of all three counts.  This appeal follows.  Additional facts will be incorporated as necessary for our analysis.

## II.    ANALYSIS.

Breeden raises three claims of error.  First, the trial court impermissibly limited his cross-examination of S.R. and thereby prevented Breeden from displaying a complete defense.  Second, the trial court erred in denying his motion for a directed verdict.  And third, the trial court erred in denying Breeden's motion to disqualify the Kenton Commonwealth's Attorney, Rob Sanders, from prosecuting Breeden due to Sanders's "financial interest in L.M.'s biological father and grandfather's company."  We address these issues in turn.

### A.    *Trial Court's Limiting Breeden's Cross-Examination of S.R.*

As noted, Breeden's and S.R.'s text conversation following L.M.'s revelation of the incidents was admitted into evidence.  S.R. testified about the texts and the ones she considered inculpatory.  Breeden argues that the trial

3

court impermissibly limited his cross-examination of S.R. by limiting that cross to only the three messages in which he denied the improper contact.

As an initial matter, we note that presentation of evidence and the scope of cross-examination is within the sound discretion of the trial court. *Baze v. Commonwealth*, 965 S.W.2d 817, 821 (Ky. 1997); *Moore v. Commonwealth*, 771 S.W.2d 34 (Ky. 1988). Our standard of review concerns whether the trial court abused its discretion, *i.e.*, whether those decisions were "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Burke v. Commonwealth*, 506 S.W.3d 307, 318 (Ky. 2016); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In reviewing this issue, we note that during S.R.'s testimony, and following her authentication of photographs of the text conversation, the Commonwealth moved for admission into evidence of the photographs. The trial court granted the motion. *See Kays v. Commonwealth*, 505 S.W.3d 260, 269 (Ky. App. 2016) (addressing requirements for authentication of text messages). No limiting admonition was requested or given. KRE 105(a). The Commonwealth then elicited testimony from S.R. about a number of Breeden's messages which S.R. deemed to be admissions. When Breeden's counsel sought to cross-examine S.R. concerning eleven messages wherein Breeden denied hurting L.M. or any sexual contact, the Commonwealth objected based on hearsay, as Breeden had not yet testified.[4]

---

[4] *Rodgers v. Commonwealth*, 285 S.W.3d 740, 748 (Ky. 2009) and *Schrimsher v. Commonwealth*, 190 S.W.3d 318, 330-31 (Ky. 2006), support the trial court's analysis, *i.e.*, that introduction of "a portion of a defendant's confession in which the defendant admits the commission of the criminal offense," does not "open[] the door for the defendant to use the remainder of that out-of-court statement for the purpose of asserting a defense without subjecting it to cross-examination." The difference in this

4

Because the trial court had already admitted the text conversation into evidence, we agree generally with Breeden that cross-examination of S.R. about the full conversation was fair game. Under KRE 611(b), "[a] witness may be cross-examined on any matter relevant to any issue in the case[.]" While the second sentence of the rule authorizes the trial court's discretion to "limit cross-examination with respect to matters not testified to on direct examination[,]" we fail to ascertain the rationale for limiting cross with respect to Breeden's and S.R.'s text conversation. If the Commonwealth, as claimed, had hearsay concerns, those concerns were waived by the introduction of a photographic reproduction of the conversation without limitation and without redaction.[5]

That noted, and while the trial court erred in limiting this cross-examination, that was harmless. RCr 9.24. While Breeden desired to ask S.R. about eleven texts in which he denied the allegations, the trial court permitted cross-examination as to three. Unlike the situation in *Sykes v. Commonwealth*, 453 S.W.3d 722, 726 (Ky. 2015) in which redactions of a confession left an incomplete and potentially misleading reproduction of the defendant's statement, Breeden's cross-examination of S.R. was able to present his denials. Additional questioning of S.R. would merely have been cumulative. In any event, the entire photographic reproduction had already been introduced

---

case is that the entire text conversation had already been admitted into evidence without limitation.

[5] Redaction was possible in that references to lie detectors or polygraphs were deleted from the text conversation.

without redaction of his denials, and ultimately, the transcriptions of the text conversation were introduced into evidence in full. No error occurred.

### B. Motion for Directed Verdict.

Breeden's second argument is that the trial court erred in failing to direct a verdict in his favor since the indictment charged him with conduct occurring in May 2017, and L.M.'s testimony indicated that the event occurred at least six months earlier. The standard for a motion for directed verdict is,

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

Breeden's argument is based on the indictment charging Breeden with actions occurring in May 2018. By contrast, Breeden claims that L.M.'s April 2019 trial testimony, when she was nine years old, indicated that she claimed the events occurred at least four or five months earlier, in December 2017 or January 2018.

By contrast, the Commonwealth argues that S.R., L.M.'s mother, was emphatic that the abuse occurred in May 2018. S.R.'s testimony further pinned down the weekend of May 4-6, 2018.

6

We agree with the Commonwealth.  We have recognized the difficulty in temporal specificity in sexual abuse cases involving child testimony.  *Hampton v. Commonwealth*, 666 S.W.2d 737, 740 (Ky. 1984); *see also Farler v. Commonwealth*, 880 S.W.2d 882, 886 (Ky. App. 1994) (noting as "wholly unreasonable to expect a child of such tender years to remember specific dates[]").  In this case, L.M. testified as to specific actions by Breeden.  S.R. testified as to specific dates.  Judging the credibility of a witness and the weight to be given the witness's testimony are purely jury functions.  *See Benham*, 816 S.W.2d at 187.  We have long-recognized that in the exercise of these functions, the jury, as finders of fact, were entitled to believe all or part of any witness's testimony and to discount other parts.  *Gillispie v. Commonwealth*, 212 Ky. 472, 474, 279 S.W. 671, 672 (1926).  The trial court did not err in denying Breeden's motion for a directed verdict.

## C.    *Commonwealth's Attorney's Relationship with Victim's Family.*

Breeden's final argument involves his claim concerning the Kenton Commonwealth's Attorney alleged conflict in prosecuting this case.  Prior to voir dire, Breeden brought to the trial court's attention a possible conflict of interest regarding Hon. Rob Sanders, the Kenton Commonwealth's Attorney and L.M.'s family, and moved to disqualify Sanders.  Breeden alleged an impermissible financial interest involving Sanders and L.M.'s biological father and grandfather because of construction work performed by them on Sanders's home.  Sanders acknowledged the construction but denied any financial interest, stating he paid full market value for the work.  Sanders further stated he had not impermissibly discussed the case with L.M.'s family.  Sanders further denied having any business relationship with L.M.'s family, other than

7

the construction work.  As an aside, we note that a rule prohibiting a Commonwealth's Attorney from discussing cases with family members would render impossible any number of criminal prosecutions.  Breeden's counsel candidly stated that Breeden had informed counsel of the allegation some time previous, but that counsel did not see a conflict.  Counsel announced ready for trial.  The trial court denied the Appellant's motion.

In this appeal, Breeden now argues that KRS[6] 15.733 required Sanders's recusal and that he is entitled to a new trial.  Breeden specifically relies on KRS 15.733(2)(f), which provides:

> Any prosecuting attorney shall disqualify himself in any proceeding in which he . . . either individually or as a fiduciary:
>
> . . .
>
> (f)      Has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

We hold that Sanders was not required to recuse.  We note that this was a criminal prosecution in which the parties were the Commonwealth of Kentucky and Breeden.  L.M. was the victim, but she was not a party, nor were members of her family.  Sanders successful prosecution of Breeden would not inure to Sanders's financial benefit, other than to Kenton County voters' inclination, perhaps, to re-elect Sanders as Commonwealth's Attorney at any subsequent election.  If the Kenton Commonwealth's Attorney's office were prosecuting a business entity in which Sanders had a financial interest, or the business competitor of such an entity, then we might be more inclined to view the

---

[6] Kentucky Revised Statutes.

statute as applicable. But under the facts of this case, KRS 15.733(2) simply has no bearing on Sanders's responsibilities and duties as prosecutor.[7]

### III. CONCLUSION.

The Kenton Circuit Court's judgment is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Darrell A. Cox
Berger & Cox

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General

---

[7] Breeden's appellate brief attaches as an exhibit a written statement from one Robert Clem dated June 30, 2019, when he was apparently incarcerated with Breeden, testifying to conversations and transactions between Sanders, Clem and L.M.'s family members. As this exhibit is not a part of the record on appeal and has apparently not been brought to the attention of the trial court, we grant the Commonwealth's motion to strike it from Breeden's brief. We enter a separate order granting the motion.